NORMAN U. PELLETIER *vs.* HAROLD V. LANGLOIS, *Warden.*

APRIL 17, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This is a petition for a writ of habeas corpus. We issued the writ on the basis of the petitioner's allegation that his confinement in the adult correctional institutions is unlawful and unconstitutional. He prays that he be released forthwith from the alleged unlawful custody of the respondent warden or, in the alternative, that he be transferred to a proper place for confinement in accordance with law.

It appears from the record that in July 1954 petitioner was arraigned before the district court of the fourth judicial district on a serious criminal charge. On July 22, 1954, prior to the final disposition of that case and in accordance with the law then in effect, the justice of that court adjudged him a defective delinquent and committed him to the custody of the division of defective delinquents of the department of social welfare. He has remained in the custodial care of the state since that commitment.

Public laws 1960, chap. 111, approved May 6, 1960, amended G. L. 1956, chap. 2 of title 14, entitled "Commitment of Defective Delinquents." In July 1960, in accordance with the statute as amended, petitioner was brought before the superior court for examination and was again adjudged a defective delinquent. On July 28, 1960 the superior court committed him to the department of social welfare in accordance with the provisions of G. L. 1956, §14-2-3, as amended.

The petitioner alleges that he is presently confined in the maximum security building of the adult correctional institutions in the custody of respondent warden. In this proceeding petitioner is not challenging the validity of the court's finding that he is a defective delinquent. Nor does he question the legality of his commitment to the department of social welfare. He does allege, however, that his confinement in the adult correctional institutions under G. L. 1956, §14-2-8, as amended, is, in its nature, no different from that of any person confined there for the commission of a crime and that, therefore, §14-2-8 violates his constitutional rights.

The state admits that petitioner is confined in the adult correctional institutions, but contends that such confinement is lawful under §14-2-8 and not violative of his constitutional rights. That section as amended reads as follows:

"Placement of defective delinquents.—The director of the department of social welfare may place any person committed to the department of social welfare under the provisions of this chapter in any of the existing state institutions under his control as may be determined from time to time to be for the better care, custody, or treatment of such person."

Before considering the constitutional questions which petitioner has raised, it is the duty of this court to determine whether the director was authorized under §14-2-8 to confine a defective delinquent in the adult correctional institutions. It is true that the statutory language is general in scope and vests the director with broad powers. The question remains whether such language is broad enough to include the power to place defective delinquents in the adult correctional institutions.

In our opinion the provisions in question, broad as they are, do not indicate a legislative intent to authorize the confinement of such persons in the adult correctional institutions. Section 14-2-8 must be read in the context of the subject matter to which it relates, namely, the commitment, not the sentencing, of defective delinquents. In enacting this statute the legislature was dealing with a problem affecting mentally defective persons, not criminals.

There is nothing in the statute indicating a legislative intent to treat such persons as prisoners in any manner. In fact, a careful examination of all legislation dealing with the problem of the mentally defective and defective delinquents reveals that the legislature has always related the care, custody and treatment of such persons to services of a curative nature, and not to the corrective services.

In the absence of clear language to the contrary, it is our opinion that under §14-2-8 the legislature intended to authorize the director of the department of social welfare to place defective delinquents only in any of the existing state institutions under his control which were within the cura-

tive services furnished by the state. Such legislative intent finds support in the closing words where the legislature expressly provides that the confinement shall be in places determined to be "for the better care, custody, or treatment of such person." In view of such language, we cannot infer a legislative intent authorizing confinement in the adult correctional institutions. In the circumstances we do not reach the constitutional questions.

The petition for habeas corpus is granted with direction to discharge the petitioner from the custody of the respondent, without prejudice to the right of the director of the department of social welfare to transfer the petitioner thereupon in accordance with law.

*Jordan Tanenbaum,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Counsel, for State, for respondent; *Thomas J. Caldarone, Jr.,* General Counsel, for Department of Social Welfare.